**IN THE UNITED STATES DISTRICT COURT
DISTRICT OF UTAH, CENTRAL DIVISION**

| | |
|---|---|
| DEBORAH C., <br><br> Plaintiff, <br><br> v. <br><br> NANCY A. BERRYHILL, Acting Commissioner of Social Security, <br><br> Defendant. | **REPORT AND RECOMMENDATION** <br><br> 2:17-cv-01082-DB-EJF <br><br> Judge Dee Benson <br><br> Magistrate Judge Evelyn J. Furse |

Plaintiff Deborah C.[1] filed this action asking this Court[2] to remand the final agency decision denying her Disability Insurance Benefits and Social Security Income under Titles II and XVI of the Social Security Act. The Administrative Law Judge ("ALJ") determined that Ms. C. did not qualify as disabled within the meaning of the Social Security Act. (ECF No. 13, Tr. 96, the certified copy of the transcript of the entire record of the administrative proceedings relating to Deborah C. (hereafter "Tr. __").) Having carefully considered the parties' memoranda and the complete record in this matter, the undersigned RECOMMENDS the District Judge REMAND the Commissioner's decision

---

[1] Pursuant to adopted best practices in the District of Utah addressing privacy concerns in certain cases, including Social Security cases, the undersigned will refer to the Plaintiff by her first name and last initial only in this Report and Recommendation.

[2] On February 16, 2018, the District Judge referred this case to the undersigned Magistrate Judge under 28 U.S.C. § 636(b)(1)(B). (ECF No. 17.)

1

so the ALJ can evaluate and weigh the opinion of Ms. C.'s treating physician, Dr. David Grygla, properly.[3]

## STANDARD OF REVIEW

42 U.S.C. §§ 405(g) and 1383(c)(3) provide for judicial review of a final decision of the Commissioner of the Social Security Administration ("SSA"). The Court reviews the Commissioner's decision to determine whether the record as a whole contains substantial evidence in support of the Commissioner's factual findings and whether the SSA applied the correct legal standards. 42 U.S.C. § 405(g); Lax v. Astrue, 489 F.3d 1080, 1084 (10th Cir. 2007). The Commissioner's findings shall stand if supported by substantial evidence. 42 U.S.C. §§ 405(g), 1383(c)(3).

Adequate, relevant evidence that a reasonable mind might accept to support a conclusion constitutes substantial evidence, and "[e]vidence is insubstantial if it is overwhelmingly contradicted by other evidence." O'Dell v. Shalala, 44 F.3d 855, 858 (10th Cir. 1994).[4] The standard "requires more than a scintilla, but less than a preponderance." Lax, 489 F.3d at 1084. "Evidence is not substantial if it is overwhelmed by other evidence—particularly certain types of evidence (e.g., that offered by treating physicians)—or if it really constitutes not evidence but mere conclusion." Gossett v. Bowen, 862 F.2d 802, 805 (10th Cir. 1988) (quoting Fulton v. Heckler, 760 F.2d 1052, 1055 (10th Cir. 1985)). Moreover, "[a] finding of 'no substantial evidence' will be found only where there is a conspicuous absence of

---

[3] Pursuant to Civil Rule 7-1(f) of the Rules of Practice for the United States District Court for the District of Utah, the undersigned does not need oral argument and will determine the appeal on the basis of the written memoranda.

[4] Courts apply the same analysis in determining disability under Title II and Title XVI. See House v. Astrue, 500 F.3d 741, 742 n.2 (8th Cir. 2007).

credible choices or no contrary medical evidence." Trimiar v. Sullivan, 966 F.2d 1326, 1329 (10th Cir. 1992) (quoting Hames v. Heckler, 707 F.2d 162, 164 (5th Cir. 1983)).

Although the reviewing court considers "whether the ALJ followed the specific rules of law that must be followed in weighing particular types of evidence in disability cases," the court "will not reweigh the evidence or substitute [its] judgment for the Commissioner's," Lax, 489 F.3d at 1084 (quoting Hackett v. Barnhart, 395 F.3d 1168, 1172 (10th Cir. 2005)), but will "review only the sufficiency of the evidence," Oldham v. Astrue, 509 F.3d 1254, 1257 (10th Cir. 2007) (emphasis in original). The court does not have to accept the Commissioner's findings mechanically but will "examine the record as a whole, including whatever in the record fairly detracts from the weight of the [Commissioner's] decision and, on that basis, determine if the substantiality of the evidence test has been met." Glenn v. Shalala, 21 F.3d 983, 984 (10th Cir. 1994) (quoting Casias v. Sec'y of Health & Human Servs., 933 F.2d 799, 800–01 (10th Cir. 1991)). "'The possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's findings from being supported by substantial evidence,'" and the court may not "'displace the agenc[y's] choice between two fairly conflicting views, even though the court would justifiably have made a different choice had the matter been before it de novo.'" Lax, 489 F.3d at 1084 (quoting Zoltanski v. FAA, 372 F.3d 1195, 1200 (10th Cir. 2004)).

In addition to a lack of substantial evidence, the court may reverse where the Commissioner uses the wrong legal standards or fails to demonstrate reliance on the correct legal standards. See Glass v. Shalala, 43 F.3d 1392, 1395 (10th Cir. 1994);

3

Thomson v. Sullivan, 987 F.2d 1482, 1487 (10th Cir. 1993); Andrade v. Sec'y of Health & Human Servs., 985 F.2d 1045, 1047 (10th Cir. 1993).

### APPLICABLE LAW AND SEQUENTIAL EVALUATION PROCESS

The Social Security Act ("Act") defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). Moreover, the Act considers an individual disabled "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." Id. §§ 423(d)(2)(A), 1382c(a)(3)(B).

In determining whether a claimant qualifies as disabled within the meaning of the Act, the SSA employs a five-step sequential evaluation process. See 20 C.F.R. §§ 404.1520, 416.920; Williams v. Bowen, 844 F.2d 748, 750-53 (10th Cir. 1988); Bowen v. Yuckert, 482 U.S. 137, 140-42 (1987). The five-step process requires the ALJ to consider whether:

(1) The claimant presently engages in substantial gainful activity;

(2) The claimant has a medically severe physical or mental impairment or impairments;

(3) The impairment is equivalent to one of the impairments listed in the appendix of the relevant disability regulation which preclude substantial gainful activity;

(4) The impairment prevents the claimant from performing his or her past work; and

    (5) The claimant possesses a residual functional capacity to perform other work in the national economy considering his or her age, education, and work experience.

20 C.F.R. §§ 404.1520, 416.920.  The claimant has the initial burden of establishing the disability in the first four steps.  Ray v. Bowen, 865 F.2d 222, 224 (10th Cir. 1989).  At step five, the burden shifts to the Commissioner to show that the claimant retains the ability to perform other work existing in the national economy.  Id.

## FACTUAL AND PROCEDURAL BACKGROUND

On August 26, 2015, Deborah C., born September 19, 1972, applied for her Disability Insurance Benefits and Supplemental Security Income, alleging disability beginning January 31, 2011 due to multiple sclerosis, type 1 diabetes, peripheral neuropathy, hidradenitis suppurativa, hearing loss, obesity, trigeminal neuralgia, celiac disease, and pseudo tumor cerebri.  (Tr. 136–38, 233, 359.)  The Commissioner denied Ms. C.'s claims on November 13, 2015, and again, upon reconsideration, on August 29, 2016.  (Tr. 145, 208–09.)  Ms. C. subsequently requested and received a hearing in front of an Administrative Law Judge ("ALJ").  (Tr. 249–250, 269–274.)  On January 23, 2017, Ms. C. and her attorney appeared at the administrative hearing.  (Tr. 107–135.)

On March 10, 2017, the ALJ issued an unfavorable decision finding Ms. C. not disabled.  (Tr. 83–96.)  The ALJ's decision followed the five-step sequential evaluation process.  (Id.)  At step one, the ALJ found Ms. C. met the insured status requirements and had not engaged in substantial gainful activity since January 31, 2011, the alleged onset date of her disability.  (Tr. 88.)  At step two, the ALJ found that Ms. C. had the

5

following severe impairments: hidradenitis suppurativa,[5] clear cell carcinoma of the left kidney (in remission, status post partial nephrectomy), obesity, and diabetes mellitus. (Id.) At step three, the ALJ found Ms. C. did not have an impairment that met or medically equaled a listed impairment. (Tr. 89.) The ALJ then found that Ms. C. had the residual functional capacity ("RFC") to perform a "full range of light work" as defined under applicable regulations. (Id.) At step four, the ALJ noted that Ms. C. had no past relevant work. (Tr. 94.) At step five, considering Ms. C.'s age, education, work experience, and RFC, the ALJ found that jobs existed in significant numbers in the national economy that she could perform. (Tr. 94–95.) Specifically, the ALJ found she could perform the requirements of occupations such as an information clerk, credit authorizer, and document prep clerk. (Tr. 95.) Consequently, the ALJ found Ms. C. not disabled and accordingly denied her application for benefits. (Tr. 95–96.)

Ms. C. subsequently asked the Appeals Council to review the ALJ's decision. (Tr. 4.) The Appeals Council granted Ms. C.'s request for review. (Id.) In its decision, the Appeals Council "adopt[ed] the Administrative Law Judge's statements regarding the pertinent provisions of the Social Security Act, Social Security Administration Regulations, Social Security Rulings and Acquiescence Rulings, the issues in the case, and the evidentiary facts, as applicable," as well as "the Administrative Law Judge's findings or conclusions regarding whether the claimant is disabled." (Tr. 4–5.) In

---

[5] "Hidradenitis suppurativa [] is rare, long-term skin condition that features small, painful lumps under the skin. They typically develop where the skin rubs together, such as the armpits, the groin, between the buttocks and under the breasts. The lumps may break open and smell or cause tunnels under the skin." https://www.mayoclinic.org/diseases-conditions/hidradenitis-suppurativa/symptoms-causes/syc-20352306 (last visited Jan. 28, 2019); see also Pl.'s Opening Br. 9, ECF No. 16 & Def.'s Answer Br. 3 n.2, ECF No. 19 (citing this definition).

6

particular, the Appeals Council indicated that it agrees with the ALJ that Ms. C. "has severe impairments of hidradenitis suppurativa, clear cell carcinoma of the left kidney, in remission, status post partial nephrectomy, obesity, and diabetes mellitus, which do not meet or equal in severity any impairment in the Listing of Impairments." (Tr. 5.) "However, the Appeals Council adopt[ed] a different residual functional capacity than that found by the Administrative Law Judge." (Id.) Specifically, the Appeals Council concluded that the ALJ's decision and the totality of the medical evidence supported sedentary work as opposed to light work with the following additional limitations to Ms. C.'s RFC:

> she is limited to lifting and/or carrying up to 20 pounds occasionally, 10 pounds frequently; standing and/or walking up to 2 hours in an 8 hour day; occasionally reaching overhead bilaterally; no ladders, ropes, or scaffolds; occasionally performing all other postural activity; working in a clean environment free from odors, dusts, or gases; and no work at unprotected heights or dangerous moving machinery.

(Id.) Despite the additional limitations to her RFC, the Appeals Council still concluded, consistent with the ALJ's decision, that Ms. C. could perform the requirements of occupations such as an information clerk, credit authorizer, and document prep clerk, and is not disabled. (Tr. 5–6.) Now Ms. C. appeals the Commissioner's final decision pursuant to 24 U.S.C. § 405(g).

## ANALYSIS

Ms. C. alleges the ALJ failed to consider and evaluate the opinion of her treating physician, Dr. David Grygla, properly when he assigned it "little weight." (Pl.'s Opening Br. 2, 5–11, ECF No. 16.) Specifically, Ms. C. argues the ALJ erred in finding Ms. C. saw Dr. Grygla only "a handful of times" and in concluding Dr. Grygla's treatment notes and the rest of the objective medical evidence do not support Dr. Grygla's statements

regarding her physical limitations. (Id. at 5.) The Commissioner concedes that the ALJ's statement that Ms. C. only saw Dr. Grygla "a handful of times" is "incorrect" but contends that "the inclusion of this one unsupported reason does not render the remaining reasons insufficient." (Def.'s Answer Brief 10, ECF No. 19.) The Commissioner argues that the ALJ cites evidence and gives good reasons in concluding that the medical evidence does not support Dr. Grygla's statements. (Id. at 10–13.) As addressed below, the undersigned agrees that the ALJ erred in his consideration and evaluation of Dr. Grygla's opinion.

An ALJ must evaluate every medical opinion. See 20 C.F.R. §§ 404.1527(c), 416.927(c) ("Regardless of its source, we will evaluate every medical opinion we receive."); SSR 96-5p, Policy Interpretation Ruling Titles II and XVI: Medical Source Opinions on Issues Reserved to the Commissioner ("SSR 96-5p"), 1996 WL 374183, at *1 (July 2, 1996) ("[O]pinions from any medical source about issues reserved to the Commissioner must never be ignored, and . . . the notice of the determination or decision must explain the consideration given to the treating source's opinion(s).")[6] "Medical opinions are statements from acceptable medical sources that reflect judgments about the nature and severity of your impairment(s), including your

---

[6] The SSA revised §§ 404.1527 and 416.927 for claims filed on or after March 27, 2017. See Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 FR 5844-01, 2017 WL 168819, at *5844–45. Further, the SSA rescinded the policy interpretation for medical source opinions (SSR 96-5p) for claims filed on or after March 27, 2017. See Rescission of Soc. Sec. Rulings 96-2p, 96-5p, & 06-3p, 2017 WL 3928298 (Mar. 27, 2017) (stating that rescission of SSR 96-5p "will be effective for claims filed on or after March 27, 2017."). Because Ms. C. filed her disability claim on August 26, 2015, the undersigned applies the pre-March 2017 version of the regulations and corresponding SSRs in effect at the time Ms. C. filed her claim.

8

symptoms, diagnosis and prognosis, what you can still do despite impairment(s), and your physical or mental restrictions." 20 C.F.R. §§ 404.1527(a)(1), 416.927(a)(1).

With respect to a treating physician's opinion, "the ALJ must complete a sequential two-step inquiry, each step of which is analytically distinct." Krauser v. Astrue, 638 F.3d 1324, 1330 (10th Cir. 2011). The "ALJ must first consider whether the opinion is 'well-supported by medically acceptable clinical and laboratory diagnostic techniques.'" Watkins v. Barnhart, 350 F.3d 1297, 1300 (10th Cir. 2003) (quoting SSR 96-2p, Titles II & XIV: Giving Controlling Weight to Treating Source Med. Opinions ("SSR 96-2p"), 1996 WL 374188, at *2 (July 2, 1996)).[7] "If the answer to this question is 'no,' then the inquiry at this stage is complete." Id. However, "[i]f the ALJ finds that the opinion is well-supported, he must then confirm that the opinion is consistent with other substantial evidence in the record." Id. "[I]f the opinion is deficient in either of these respects, then it is not entitled to controlling weight." Id. But if the ALJ finds a treating physician's opinion "well-supported by medically acceptable clinical and laboratory diagnostic techniques and [] not inconsistent with the other substantial evidence in [the]

---

[7] As noted above, the SSA revised §§ 404.1527 and 416.927 for claims filed on or after March 27, 2017. See Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 FR 5844-01, 2017 WL 168819, at *5844–45. The SSA also rescinded the policy interpretation for treating source opinions (SSR 96-2p) for claims filed on or after March 27, 2017. See Rescission of Soc. Sec. Rulings 96-2p, 96-5p, & 06-3p, 2017 WL 3928298 (Mar. 27, 2017) (stating that rescission of SSR 96-2p "will be effective for claims filed on or after March 27, 2017."). Because Ms. C. filed her disability claim on August 26, 2015, the undersigned applies the pre-March 2017 version of the regulations and corresponding SSRs in effect at the time Ms. C. filed her claim.

case record," then the ALJ must give the opinion controlling weight. 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2).

"Even if a treating opinion is not given controlling weight, it is still entitled to deference[.]" Krauser, 638 F.3d at 1330. When the ALJ does not give a treating physician's opinion controlling weight, the second step of the analysis requires that the ALJ consider the following factors in deciding the weight to give the treating physician's opinion:

> (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion.

Watkins, 350 F.3d at 1300–01 (citation omitted); see also 20 C.F.R. §§ 404.1527(c), 416.927(c).

The ALJ's decision need not "apply expressly each of the six relevant factors in deciding what weight to give a medical opinion." Oldham, 509 F.3d at 1258. However, "the ALJ must make clear how much weight the opinion is being given (including whether it is being rejected outright) and give good reasons, tied to the factors specified in the cited regulations for this particular purpose, for the weight assigned." Krauser, 638 F.3d at 1330; see Watkins, 350 F.3d at 1300 (stating that the ALJ's "decision 'must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight.'" (quoting SSR 96–2p, 1996 WL 374188, at *5)). A court may not supply possible reasons for assigning the weight the ALJ did and may only evaluate the ALJ's

10

decision on the stated reasons.  Robinson v. Barnhart, 366 F.3d 1078, 1084–85 (10th Cir. 2004).

The ALJ acknowledged that on January 6, 2015, Dr. Grygla submitted a treating source statement regarding Ms. C.'s physical limitations.  (Tr. 92 (citing Tr. 751–52).)  In that statement Dr. Grygla indicated that he treated Ms. C. for more than nine years and diagnosed her with hidradenitis suppurativa, diabetes, sleep apnea, hypoxia, depression, fatigue, optic neuritis, and peripheral neuropathy from diabetes.  (Tr. 751; see also Tr. 92.)  He listed her prognosis as "[g]uarded" and noted clinical findings of "[p]ainful lesions under arms."  (Id.)  He further opined that Ms. C. could only perform sedentary work, that her symptoms would interfere with attention and concentration for 15% to 20% of the workday, that she would miss four or more days of work per month due to her impairments, and that she could work a full time job with less than 50% efficiency.  (Tr. 751–52; see also Tr. 92.)  Dr. Grygla concluded that "taken in combination, her medical and mental health issues make it impossible for [Ms. C.] to work full time in a competitive work environment."  (Tr. 752; see also Tr. 92.)  As to Dr. Grygla's opinion, the ALJ concluded that

> [a]lthough Dr. Grygla is noted to be one of the claimant's treating physician[s] for several years, the record revealed that he had only seen her a handful of times, with the latest record being routine treatment in December 2015.  (13F, 28F, 43F)  As the limitations are far more extreme than the treatment notes and the rest of the objective medical evidence support, this opinion is given little weight.

(Tr. 92-93.)

First, as the Commissioner concedes, the ALJ incorrectly concluded that Dr. Grygla saw Ms. C. only "a handful of times."  The administrative record before the ALJ at the time of his decision reveals that Dr. Grygla examined Ms. C. at least seventeen

11

times.  (Tr. 664–68 (2 visits), 827–62 (15 visits; 861-62 is the same visit as 664-65), 897–99 (1 visit), 1155-57 (same visit as 897–99).)  Notably, his citations to the medical records purportedly showing that Dr. Grygla only saw Ms. C. "a handful of times," omit any reference to 26F of the administrative record (Tr. 827–62), which contains treatment notes for fifteen different visits that Ms. C. made to Dr. Grygla between May 14, 2013 and May 13, 2015.  While the ALJ did have the May 14, 2013 notes elsewhere, he did not review any of the other fourteen visits.  Given the ALJ's lack of citation to these treatment notes anywhere in his decision combined with his statement that Dr. Grygla saw Ms. C only a handful of times, the undersigned must conclude that the ALJ did not consider these records.  The existence of these treatment notes proves the ALJ lacked substantial evidence for his first basis to discount Dr. Grygla's opinion—that Ms. C. had only seen him a handful of times.

Further, the ALJ also incorrectly states that the latest of Dr. Grygla's treatment notes, from December 2015, reflects routine treatment.  (See Tr. 92 (stating that "the record revealed that [Dr. Grygla] had only see [Ms. C.] a handful of times, with the latest record being routine treatment in December 2015").)  The latest record available to the ALJ at the time of his decision, which he cites at 28F and 43F, dates from January 2016, and indicates that Ms. C.'s "axillary" or armpit "cysts are inflamed on the left again," and assesses her with hidradenitis suppurativa and fatigue, among other things.  (Tr. 897, 1155.)  Because the record contradicts the ALJ's conclusion that Dr. Grygla saw Ms. C. only "a handful of times, with the latest record being routine treatment in

December 2015," the undersigned finds that substantial evidence does not support this reason for discounting Dr. Grygla's opinion either.

Second, the ALJ's conclusion that Dr. Grygla's treatment notes do not support Dr. Grygla's conclusions regarding Ms. C.'s extreme limitations calls the ALJ's conclusion into question given the ALJ did not consider the majority of Dr. Grygla's treatment notes. The treatment notes from September 20, 2013 to May 13, 2015—which the ALJ did not consider—indicate that Dr. Grygla assessed Ms. C. with a variety of conditions, including diabetes (Tr. 830, 835, 838, 840, 843, 845, 847, 849, 854, 856, 858), hidradenitis suppurativa (Tr. 830, 832, 835, 838, 840, 843, 849, 852), hypoxemia (Tr. 835, 843, 847), depression (Tr. 832, 835, 845, 847, 858), fatigue (Tr. 835, 838, 843, 845, 849), optic neuritis (Tr. 830, 835, 838, 858), neurological manifestations from diabetes (Tr. 832, 835, 845, 847, 849, 858), and sleep apnea (Tr. 830, 832), and that he treated her for many of those conditions (Tr. 830–31, 832–33, 835–36, 838, 840–41, 843–44, 845–46, 847, 849–50, 858–59). Dr. Grygla also indicated that Ms. C. presented with "painful" "cysts under her left arm" that "are recurrent," and treated her for that issue. (Tr. 852.) These records also include documentation of medical testing of these conditions. Thus, the treatment notes that the ALJ did not consider support Dr. Grygla's treating source statement that he diagnosed Ms. C. with hidradenitis suppurativa, diabetes, sleep apnea, hypoxia, depression, fatigue, optic neuritis, and peripheral neuropathy from diabetes, and noted clinical findings of "[p]ainful lesions under arms." (Tr. 751.) Given the treatment notes in the record before the ALJ, the undersigned finds substantial evidence does not support the ALJ's second reason—that

Dr. Grygla's treatment notes fail to support his statements concerning Ms. C.'s limitations—for discounting Dr. Grygla's opinion.

Third, the ALJ does not explain the basis for his conclusion that Dr. Grygla's statements concerning Ms. C.'s limitations are more extreme than "the rest of the objective medical evidence support[s]." While the Commissioner claims that after making this statement, "the ALJ immediately launched into a discussion of that evidence as it related to each medical condition," (Def.'s Answer Brief 11, ECF No. 19), the ALJ's decision reads otherwise. The ALJ does not tie his subsequent discussion to this conclusion, and in any event, he does not discuss the evidence relating to "each medical condition" that Dr. Grygla addressed in his treating source statement, as the Commissioner claims. For example, the ALJ does not address Ms. C.'s depression, optic neuritis, peripheral neuropathy from diabetes, or underarm lesions following his conclusion that the objective medical evidence does not support Dr. Grygla's statements. Simply put, the ALJ does not explain how Dr. Grygla's treating source statement exceeds the objective medical evidence in the record, preventing the undersigned from meaningfully reviewing his findings in this regard. See Langley v. Barnhart, 373 F.3d 1116, 1123 (10th Cir. 2004) ("Because the ALJ failed to explain or identify what the claimed inconsistencies were between [the treating physician's] opinion and the other substantial evidence in the record, his reasons for rejecting that opinion are not 'sufficiently specific' to enable this court to meaningfully review his findings.") Furthermore, without having reviewed all of Dr. Grygla's records, the ALJ

could not conclude that the objective medical evidence in the record did not support Dr. Grygla's findings because he had not seen all of the objective evidence in the record.

Fourth, the ALJ did not conduct the required sequential evaluation of Dr. Grygla's opinion. As an initial matter, the ALJ did not determine whether "'the opinion is well-supported by medically acceptable clinical and laboratory diagnostic techniques.'" See Watkins, 350 F.3d at 1300 (quoting SSR 96-2p, 1996 WL 374188, at *2). Instead, the ALJ appears to have skipped to the second step and found Dr. Grygla's opinion inconsistent with other evidence in the record. (Tr. 92-93.) As a result of this conclusion, the ALJ apparently declined to accord Dr. Grygla's opinion controlling weight. Of course the ALJ may decline to afford a treating physician controlling weight. However, he may not end the inquiry at this step. The ALJ must then consider the six Watkins factors in determining the weight to give Dr. Grygla's opinion. See 350 F.3d at 1300–01. The ALJ need not expressly discuss every factor in his opinion. Oldham, 509 F.3d at 1258. However, here, the ALJ made unsupported conclusions regarding certain factors, such as the length of the treatment relationship and the degree to which the record supports the physician's opinion, and did not address other relevant Watkins factors, including the treatment provided and testing performed. (See Tr. 92–93.) On remand, the ALJ should conduct the required sequential evaluation of Dr. Grygla's opinion.

Finally, the ALJ's decision to afford Dr. Grygla's opinion "little weight" reflects a significant finding in this case. Dr. Grygla opined that Ms. C. is limited to sedentary work, that her symptoms are severe enough to interfere with her attention and concentration for 15% to 20% of the workday, that she would miss four or more days of

work per month due to her impairments, and that she could work a full time job with less than 50% efficiency.  (Tr. 751–52.)  Thus, had the ALJ afforded controlling weight or simply greater weight to his opinion, Ms. C. may qualify as disabled because Dr. Grygla opined Ms. C would miss four days of work a month, and the vocational expert testified more than two days of missed work a month would rule out any of the proposed jobs. (Tr. 751-52, 132-33.)  Given the particular significance of Dr. Grygla's opinion, the undersigned cannot recommend the District Court find the ALJ's errors harmless.

For the reasons addressed above, the undersigned finds that substantial evidence does not support the ALJ's reasons for according Dr. Grygla's opinion "little weight" and that the ALJ failed to apply the correct legal standards to his analysis of Dr. Grygla's opinion in this case.  Accordingly, the undersigned RECOMMENDS the District Judge remand this case so the ALJ can evaluate and weigh Dr. Grygla's opinion properly, consistent with the analysis set forth above.

## **RECOMMENDATION**

For the reasons set forth above, the undersigned RECOMMENDS the District Judge REMAND the Commissioner's decision.

The Court will send copies of this Report and Recommendation to the parties and hereby notifies them of their right to object to the same.  The Court further notifies the parties that they must file any objection to this Report and Recommendation with the Clerk of the Court,  pursuant to 28 U.S.C. § 636(b) and Fed. R. Civ. P. 72(b), within fourteen (14) days of service thereof.  Failure to file objections may constitute waiver of objections upon subsequent review.

DATED this 30th day of January, 2019.

BY THE COURT:

_____
EVELYN J. FURSE
United States Magistrate Judge

17